IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CECIL F. SMITH**, | Case No. 3:17-cv-86-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **EVRAZ INC., NA**, a Delaware Corporation, | |
| Defendant. | |

Matthew J. Kalmanson and Michael G. Jacobs, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland, OR 97205. Of Attorneys for Plaintiff.

James P. McCurdy and Alice S. Newlin, LINDSAY HART, LLP, 1300 SW Fifth Avenue, Suite 3400, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

On December 20, 2016, Plaintiff Cecil F. Smith ("Smith") brought this lawsuit alleging negligence against Defendant EVRAZ Inc., NA ("EVRAZ"). Plaintiff originally filed his action against Defendant in Multnomah County Circuit Court, and Defendant timely removed the lawsuit to this Court. Plaintiff seeks damages for a personal injury that he sustained on January 7, 2013, when he stepped into a pothole five inches deep while working at a slab yard controlled and subleased by Defendant at Terminal 6 at the Port of Portland. Defendant has moved for

PAGE 1 – OPINION AND ORDER

summary judgment, asserting that Plaintiff's claim is barred by Oregon's two-year statute of limitations for negligence actions. For the reasons that follow, the Court GRANTS Defendant's motion.

**STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The party moving for summary judgment bears the burden to show "beyond controversy" all essential elements of the claim or defense asserted. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). When a defendant asserts that a claim is barred by an applicable statute of limitation, defendant bears the burden to show the statute applied and that plaintiff failed to file suit within the allowed timeframe. *See Keller v. Armstrong World Industries, Inc.*, 342 Or. 23, 38 n.12 (2006) (finding that "[b]ecause the statute of limitations is an affirmative defense" for which the asserting party "has the burden of persuasion at trial," a party moving for

summary judgment on such grounds bears the burden to produce evidence supporting the motion).

"A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). A federal court must apply a state's substantive law as it has been described by the state's highest court, including reasoned dicta. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013)). In the absence of a state high court decision that squarely addresses an issue, this Court must follow the state's intermediate appeals court decisions unless there is "convincing evidence that the highest court of the state would decide differently." *American Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136, 1143 (9th Cir. 1981) (quoting *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467 (1940)); *Tompkins*, 840 F.3d at 1023 ("we generally will 'follow a published intermediate state court decision regarding [state] law unless we are convinced that the [state's highest court] would reject it.'" (quoting *Muniz*, 738 F.3d at 219)).

## BACKGROUND

Since 1988, Smith has been a longshore worker and marine clerk. Since 2009, he has been a member of the International Longshore and Warehouse Union, Local 40. On January 7, 2013, Smith was working for Jones Stevedoring as a marine clerk when he stepped into a pothole five inches deep at the slab yard at Terminal 6 of the Port of Portland in Oregon. As a result, Smith tore his left Achilles tendon. Smith knew immediately that he had injured his left leg.

Since 2010, ICTSI Oregon, Inc. ("ICTSI") leases Terminal 6 from the Port of Portland (the "Port") and since 2012 operates Terminal 6. EVRAZ, formerly known as "Oregon Steel Mills," operates a steel milling facility and uses Terminal 6 to load and unload cargo to and from merchant vessels. EVRAZ subleases the slab yard at Terminal 6 from ICTSI.

On January 7, 2013, the day of his injury, Smith knew that the Port owned Terminal 6, that ICTSI leased and operated Terminal 6, and that EVRAZ subleased from ICTSI the slab yard where Smith was injured. At the time of his injury, however, Smith did not know how the Port, ICTSI, and EVRAZ allocated among themselves contractual responsibilities for maintaining the slab yard's pavement.

At the time of his injury, Smith was working for Jones Stevedoring, counting steel slabs for EVRAZ. According to Smith, potholes on the slab yard were a known problem, and both ICTSI and EVRAZ previously had been informed of their existence.

On August 12, 2013, Smith's attorney sent a letter to the Port, requesting all documents regarding leases and maintenance agreements relevant to Terminal 6 as of the day of Smith's injury. The letter requested copies of these documents to assist Smith's attorney in determining who had contractual responsibility for filling the potholes at the slab yard. On November 25, 2013, after three months with no response from the Port, Smith's attorney sent a second letter, threatening to subpoena the Port's records. On December 11, 2013, the Port provided Smith with a copy of the lease between the Port and ICTSI, which indicated that ICTSI was responsible for maintaining the pavement at the slab yard at the time Smith was injured.

On January 13, 2015, Smith filed a lawsuit against ICTSI in federal court, based on the injury that Smith suffered at the slab yard at Terminal 6 on January 7, 2013. *Smith v. ICTSI Oregon, Inc.*, Case No. 3:15-cv-00035-BR (D. Or.) (the "*ICTSI* Lawsuit"). The lawsuit was assigned to U.S. District Judge Anna Brown. Smith alleged in this lawsuit that ICTSI was obligated under its lease of Terminal 6 with the Port to maintain the asphalt surface of the leased premises, including an obligation to eliminate large potholes in the pavement. Smith did not name either the Port or EVRAZ as additional defendants in the *ICTSI* Lawsuit.

ICTSI moved for summary judgment, arguing that Smith's claim was barred by Oregon's two-year statute of limitations for negligence actions. According to ICTSI, because the injury occurred on January 7, 2013, and Smith's lawsuit was not filed until January 13, 2015, two years and six days later, the action was untimely. Smith's attorney responded that he had attempted to file Smith's complaint against ICTSI on January 7, 2015, exactly two years after the date of Smith's injury, but Smith's attorney was unable to upload the complaint into the district court's electronic filing and docketing system until January 13, 2015. On March 2, 2016, Judge Brown granted ICTSI's motion, after concluding that ICTSI's role in causing Smith's injury was inherently discoverable on January 7, 2013, the day of the accident. *Smith v. ICTSI Oregon, Inc.*, 2016 WL 866313, at *4 (D. Or. March 2, 2016). Smith appealed the district court's ruling, but a decision has not yet been issued by the Ninth Circuit. *See Smith v. ICTSI Oregon, Inc.*, Ninth Circuit Case No. 16-35242.

According to Smith, he first learned from ICTSI that other parties may bear some contractual responsibility for maintaining the pavement at the slab yard when he read ICTSI's answer to the complaint in the *ICTSI* Lawsuit. Smith adds that it was not until December 29, 2015, at oral argument on ICTSI's motion for summary judgment, that Smith actually discovered that EVRAZ was contractually responsible for filling potholes at the slab yard.

On December 20, 2016, Smith commenced the present lawsuit against EVRAZ in state court, alleging negligence. EVRAZ timely removed the action to federal court. EVRAZ now seeks summary judgment under Oregon's two-year statute of limitations for negligence claims.

## DISCUSSION

### A. Oregon's Statute of Limitations and the Discovery Rule

Under Oregon law, a personal injury claim not arising on contract "shall be commenced within two years" of the claim's accrual. Or. Rev. Stat. § 12.110(1). Oregon common law allows

PAGE 5 – OPINION AND ORDER

for potential tolling of this two-year window under what is known as the "Discovery Rule."
*Doughton v. Morrow*, 255 Or. App. 422, 428 (2013) (citations omitted). Under the Discovery Rule, "the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exist." *Gaston v. Parsons*, 318 Or. 247, 256 (1994); *see T. R. v. Boy Scouts of Am.*, 344 Or. 282, 291-92 (2008) (noting that the Discovery Rule in Oregon mirrors the generally accepted common law rule that "the statute of limitations does not begin to run until a reasonably prudent plaintiff perceives both the injury and the role that the defendant has played in that injury").

The Discovery Rule may toll the statute of limitations unless the elements of a claim were "inherently discoverable at the time of the incident." *Gehrke v. Crafco, Inc.*, 143 Or. App. 517, 524 (1996). "In some cases, the relevant facts are so obvious to a reasonable person that they are said to be 'inherently discoverable.'" *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 519 (2007). Although Oregon law often reserves to a jury the question of when a plaintiff should have become aware of a substantial possibility that a defendant was responsible for an injury, a court may resolve the issue on summary judgment "if every rational juror, asked whether plaintiff should reasonably have known [on the date of an injury] that defendant was probably responsible, would answer in the affirmative." *Johnson v. Multnomah Cty. Dept. of Cmty. Justice*, 210 Or. App. 591, 597-98 (2007), *aff'd* 344 Or. 111 (2008).

**B. Inherent Discoverability**

The question before the Court is whether Smith's negligence claim is barred by Oregon's applicable two-year statute of limitations as a matter of law. To answer that, the Court must determine whether the Discovery Rule tolls the running of the two-year period in this case to some date after January 7, 2013, the date of Smith's injury, within two years of the date of filing.

PAGE 6 – OPINION AND ORDER

If EVRAZ's role in causing Smith's injury was "inherently discoverable" on the day of the accident, the Discovery Rule does not toll the statute of limitations, and EVRAZ's motion for summary judgment must be granted. *See Gehrke*, 143 Or. App. at 523-24.

Smith filed his Complaint against EVRAZ on December 20, 2016, almost four years after the day of his accident. Smith's personal injury was immediately apparent to him on January 7, 2013. Smith argues that the Discovery Rule tolls the Oregon statute of limitations to a date within two years of December 20, 2016, because Smith did not immediately know that EVRAZ was contractually responsible for maintaining the pavement at the slab yard and Smith's investigation into which entity had the contractual duty to fix potholes at the slab yard was delayed by the complexity of the lease agreement between the Port and ICTSI.

EVRAZ argues that Smith's negligence claim accrued on the day of the injury, January 7, 2013, because EVRAZ's probable negligence in causing Smith's injury was "inherently discoverable" based solely on facts that Smith admits he knew at the time of the injury. Smith admits that, as of the day of the accident, he knew that EVRAZ subleased the slab yard where the injury occurred, that Smith was working at the slab yard under the direction of EVRAZ when the injury occurred, that the existence of potholes at the slab yard had been known by EVRAZ to be a danger for some period of months before the injury occurred, and stepping into a pothole on the slab yard was the immediate cause of Smith's injury. Thus, according to EVRAZ, it does not matter whether Smith also had knowledge of how the Port, ICTSI, and EVRAZ might have contractually allocated among themselves maintenance responsibilities for the slab yard; EVRAZ still had responsibility in tort for the injury that Smith suffered on January 7, 2013, due to EVRAZ's alleged negligence.

Based on these undisputed facts, EVRAZ argues that its role in causing Smith's injury was "inherently discoverable" on January 7, 2013, and that as a result, Smith's negligence claim accrued on that day, as a matter of law. EVRAZ primarily relies upon two cases: (1) *Cook v. Sibjet*, 2000 WL 33946062 (D. Or. Dec. 15, 2000); and (2) *Gehrke v. Crafco, Inc.*, 143 Or. App. 517 (1996). In *Cook*, the plaintiff was injured when her son's cigarette lighter exploded. 2000 WL 33946062, at *1. The plaintiff initially alleged that the identity of the manufacturer could not be discerned from the remnants of the exploded lighter. *Id.* at *2. During her deposition, however, the plaintiff admitted that she had knowledge of facts indicating who manufactured and distributed the malfunctioning lighter shortly after her injury. *Id.* at *2-3. She acknowledged that shortly after the injury she was able to read "YOUR Basic LIGHTER," "Djeep," and "Made in France" on shards of the exploded lighter. She also knew that her son only smoked Basic brand cigarettes. *Id.* at *5. Based on these admissions, the court held that the identity of the tortfeasor was inherently discoverable shortly after the injury because the facts known to the plaintiff indicated "the distributor and manufacturer of the lighter that injured her." *Id.* at *6.

In *Gehrke*, the plaintiff tripped over part of a display shelf at a craft store and was injured. 143 Or. App. at 519. The plaintiff originally sued an incorrect defendant due to confusion over which entity legally possessed the store at the time of the injury. *Id.* at 519-20. The court held that the Discovery Rule did not toll the statute of limitations because "plaintiff knew or should have known that she had been wronged by the possessor of the store at the time of the fall, even though she did not know whom the possessor was." *Id.* at 523. The court explained that the store's causal role in the plaintiff's injury was obvious at the time and that the true possessor of the store is a fact that was inherently discoverable. *Id.* at 524.

Smith responds by arguing that *Gehrke* is distinguishable from this case. In *Gehrke*, the court found that the identity of the possessor of the store was inherently discoverable, and the possessor unquestionably was the liable party. Smith argues that his admitted knowledge of EVRAZ's possession and control of the slab yard does not definitively answer the issue of liability as it did in *Gehrke*. According to Smith, three parties were potentially liable to him, the Port, ICTSI, and EVRAZ, and he did not know for some time how they had contracted allocated among themselves the responsibility to maintain the slab yard.

Smith also argues that the Oregon Court of Appeals' decision in *Cole v. Sunnyside Marketplace* supports Smith's argument that the doctrine of inherent discoverability does not show that Smith's claim against EVRAZ accrued on January 7, 2013. In *Cole*, the plaintiff was abducted after leaving her job at a coffee shop in a mall. 212 Or. App. at 511. The plaintiff sued both the mall owner and the property manager for negligently failing to provide security. *Id.* During discovery, the plaintiff learned that a third party had been contracted to provide security at the mall. *Id.* at 511-12. The court found that the third-party security provider's role was not inherently discoverable. *Id.* at 520 ("[A]t the time of her injury, the plaintiff did not know the identity of the tortfeasor . . . at all. In fact, it is undisputed that she did not know that [the] mall had contracted with *anyone* to provide security." (emphasis in original)). From this, the court concluded, the plaintiff's claim against the security company was not time-barred.

*Cole*, however, is factually distinguishable because Smith did know about the existence of EVRAZ as a possible tortfeasor on the day of his injury. It was not EVRAZ's existence that was unknown to Smith, as was the situation concerning the security company in *Cole*. Rather, Smith simply was unaware of the contractual terms among the Port, ICTSA, and EVRAZ in which they allocated among themselves maintenance responsibilities for the slab yard. This,

PAGE 9 – OPINION AND ORDER

however, did not affect their obligations to third parties, such as Smith. Thus, unlike the plaintiff in *Cole*, who could not sue a defendant of whom she was completely unaware, Smith could have named EVRAZ as a defendant, along with ICTSI if Smith so chose, in a timely lawsuit.

The Court agrees with EVRAZ regarding the application of *Gehrke* in this case. Smith admits that on the day of the accident, he knew that he was working at the direction of EVRAZ on a slab yard that EVRAZ subleased from ICTSI and that EVRAZ previously had been warned about the dangerous condition of potholes present at the slab yard. As with the plaintiff in *Gehrke*, Smith "knew or should have known that [he] had been wronged by the possessor of the [slab yard]." 143 Or. App. at 523. Smith knew that he was seriously injured the moment he stepped into the pothole and heard a snap in his lower leg, and he knew of the dangerous condition of potholes at the slab yard.

These admitted and undisputed facts are sufficient to raise a "substantial possibility that each of the three elements (harm, causation, and tortious conduct) exist[ed]" as to EVRAZ. *See Gaston*, 318 Or. at 256 (holding that the statute of limitations begins to run when a plaintiff knows, or in the exercise of reasonable care should know, that the three elements of a negligence claim exist). The Court finds that every reasonable juror would agree that Smith either knew or reasonably should have known of the substantial possibility that EVRAZ was the responsible party on January 7, 2013.[1] *See Johnson*, 210 Or. App. at 594.

---

[1] The Court also notes that under general principles of premises liability the person in possession and control of land is obligated to cause no unreasonable harm to others in the vicinity. *See* W. Page Keeton, *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS § 57, at 386 (5th ed. 1984). Oregon law is similar. *See Woolston v. Wells*, 297 Or. 548, 557 (1984) (holding that "[i]n general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit"). Thus, Smith's knowledge of EVRAZ's sublease and possession of the slab yard by itself should have raised at least a substantial possibility that EVRAZ had a duty to maintain the premises free of unreasonable risks, such as known potholes.

## CONCLUSION

Defendant EVRAZ Inc., NA's Motion for Summary Judgment (ECF 5) is GRANTED.

**IT IS SO ORDERED**.

DATED this 22nd day of May, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge